## No. 22-2486

# In the
# United States Court of Appeals
## for the Seventh Circuit

CAROLYN BRIDGES and RAYMOND CUNNINGHAM,

*Plaintiffs-Appellants,*

v.

BLACKSTONE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:21-cv-01091-DWD.
The Honorable **David W. Dugan**, Judge Presiding.

## BRIEF AND SHORT APPENDIX OF PLAINTIFFS-APPELLANTS

Gregory L. Shevlin
(*Counsel of Record*)
COOK, BARTHOLOMEW,
SHEVLIN, COOK & JONES, LLP
12 West Lincoln Street
Belleville, IL 62220
(618) 235-3500

Jonathan M. Jagher
FREED KANNER LONDON
& MILLEN, LLC
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486

Katrina Carroll
LYNCH CARPENTER LLP
111 West Washington Street
Suite 1240
Chicago, IL 60602
(312) 750-1265

*Counsel for Appellants*
*Carolyn Bridges* and *Raymond Cunningham*

 COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER 

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2486

Short Caption: Carolyn Bridges and Raymond Cunningham v. Blackstone, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Carolyn Bridges and Raymond Cunningham

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Cook, Bartholomew, Shevlin, Cook & Jones, LLP, Freed Kanner London & Millen, LLC, Lynch Carpenter, LLP,

and Mason Lietz & Klinger, LLP

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         N/A

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Gregory L. Shevlin        Date: 11/11/22

Attorney's Printed Name: Gregory L. Shevlin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓   No ☐

Address: 12 West Lincoln St., Belleville, IL 62220

Phone Number: 618-235-3500        Fax Number: 618-235-7286

E-Mail Address: gls@cbsclaw.com

rev. 12/19 AK

Filed: 11/14/2022    Document: 18    Case: 22-2486    Pages: 48

Save As

Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appeliate Court No: <u>22-2486</u>

Short Caption: <u>Carolyn Bridges, et al v. Blackstone, Inc.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Plaintiffs Carolyn Bridges and Raymond Cunningham</u>

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Freed Kanner London & Millen LLC</u>

(3)   If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

         <u>N/A</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         <u>N/A</u>

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/Jonathan M. Jagher</u>      Date: <u>09/14/2022</u>

Attorney's Printed Name: <u>Jonathan M. Jagher</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: <u>923 Fayette Street Conshohocken, Pennsylvania 19428</u>

Phone Number: <u>(610) 234-6486</u>      Fax Number: <u>(224) 632-4521</u>

E-Mail Address: <u>jjagher@fklmlaw.com</u>

rev. 12/19 AK

Pages: 48

Filed: 09/14/2022

Document:10

Case:22-2486

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2486

Short Caption: Carolyn Bridges and Raymond Cunningham v. Blackstone, Inc.

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

　　Carolyn Bridges and Raymond Cunningham

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

　　Lynch Carpenter, LLP; Cook, Bartholomew, Shevlin, Cook & Jones; Milberg Coleman Bryson Phillips Grossman

　　PLLC; Freed Kanner London & Millen LLC.

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Katrina Carroll　　　　Date: 9/14/2022

Attorney's Printed Name: Katrina Carroll

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☐　No ☑

Address: 111 W. Washington Street, Suite1240

　　Chicago, IL 60602

Phone Number: 312-750-1265　　　　Fax Number: 773-598-5609

E-Mail Address: katrina@lcllp.com

rev. 12/19 AK

## **TABLE OF CONTENTS**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................................................................. i

TABLE OF AUTHORITIES ................................................................................................ v

JURISDICTIONAL STATEMENT ....................................................................................... 1

STATEMENT OF THE ISSUE ............................................................................................ 2

STATEMENT OF THE CASE ............................................................................................. 2

SUMMARY OF THE ARGUMENT ...................................................................................... 5

ARGUMENT ................................................................................................................... 6

   I.   STANDARD OF REVIEW ....................................................................................... 6

   II.  THE DISTRICT COURT ERRED IN DISMISING PLAINTIFFS' CLASS ACTION
       COMPLAINT .......................................................................................................... 7

      A.  The well-pleaded allegations lead to the plausible inference that Blackstone
          illegally "compelled" the disclosure of genetic information, in violation of
          GIPA ............................................................................................................ 7

      B.  The information alleged to have been received by Blackstone is protected by
          GIPA .......................................................................................................... 20

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*Brill v. Countrywide Home Loans, Inc.,*
    427 F.3d 446 (2005)..................................................................... 1

*Chessie Logistics Co. v. Krinos Holdings, Inc.,*
    867 F.3d 852 (7th Cir. 2017) ...................................................... 12

*La Porte Cnty. Republican Cent. Comm. v. Bd. of Comm'rs of Cnty. of La Porte,*
    43 F.3d 1126 (7th Cir. 1994) ..................................................... 12

*Rushton v. Dep't of Corr.,*
    160 N.E.3d 929 (Ill. 2019) ........................................................... 9

*Skaperdas v. Country Cas. Ins. Co.,*
    28 N.E.3d 747 (Ill. 2015) ............................................................. 9

*Tamayo v. Blagojevich,*
    526 F.3d 1074 (7th Cir. 2008) .............................................. passim

*United States v. Wallace & Tiernan Col.,*
    336, U.S. 793 (1949) ..................................................................... 2


**STATUTE(S)**

28 U.S.C. § 1291 ............................................................................... 2

28 U.S.C. § 1332(d)(2) ..................................................................... 1

28 U.S.C. § 1446 ............................................................................... 1

28 U.S.C. § 1453 ............................................................................... 1

410 ILCS 513.......................................................................... 1, 2, 5

410 ILCS 513/10............................................................................... 5

410 ILCS 513/15(a) .......................................................................... 4

410 ILCS 513/15(b)........................................................................... 8

410 ILCS 513/22 ................................................................................................ 8

410 ILCS 513/30 ........................................................................................ 10, 21

410 ILCS 513/30(a) ....................................................................................... 4, 8

410 ILCS 513/30(a)(3)–(6) ............................................................................... 8

410 ILCS 513/31–31.10 .................................................................................... 8

410 ILCS 513/5(1)–(3) .................................................................................... 19

HIPAA Reg. 45 FR 160.103 ............................................................................. 4

## **RULES**

Fed. R. App. P. 4(a)(1)(A) ............................................................................... 2

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because this was a civil action arising under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). As alleged in the Complaint: (1) the putative class includes more than 100 members; (2) there is minimal diversity of citizenship, because the named Plaintiffs-Appellants are both citizens of Illinois and the Defendant-Appellee is a citizen of Delaware (place of incorporation) and New York (principal place of business); and (3) the complaint alleges a "reasonable probability," *see Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (2005), that the amount in controversy exceeds $5,000,000. (Doc. 1 p.3 (Notice of Removal); Doc. 22 (Amended Complaint) ¶ 12 (class size), ¶¶ 15-17 (citizenship), ¶ 12 (amount in controversy.))[1] Moreover, the case does not fall within any of the exceptions or exclusions under 28 U.S.C. § 1332(d)(2).

Defendant also filed its Notice of Removal within 30 days of being served with the Complaint and otherwise complied with the removal procedures of 28 U.S.C. § 1446 and 28 U.S.C. § 1453. (Doc. 1 p.3 (noting that the Complaint was served on August 4, 2021, and the case was removed on September 2, 2021)). Furthermore, the named Plaintiffs had standing to allege their claims under the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513, *et. seq.* ("GIPA"). (Doc. 1 ¶¶ 21-24.

---

[1] Citations to the record on appeal use the abbreviation "Doc." for the docket entry number in the district court below.

The district court here dismissed the case without prejudice. That order is a final judgment appealable under 28 U.S.C. § 1291. *See United States v. Wallace & Tiernan Col.*, 336, U.S. 793, 794 n. 1 (1949) (dismissal without prejudice is an appealable final order if it ends the suit so far as the district court is concerned.) No claims by any parties are still pending in the district court.

The district court dismissed the case on July 8, 2022 (Doc. 41), and Plaintiffs timely filed the Notice of Appeal within 30 days, on August 23, 2022 (Doc. 44), as required by Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUE

1. Whether, under the *de novo* standard of review, the district court erred in dismissing Plaintiffs' Complaint when it misconstrued and misapplied certain key facts and drew numerous inferences *against* non-movant Plaintiffs?

## STATEMENT OF THE CASE

This appeal rises out of a putative class action involving Blackstone Inc. ("Blackstone"), one of the most well-resourced private equity firms in the world, which acquired Ancestry.com ("Ancestry") and compelled Ancestry to disclose thousands of Illinois residents' genetic tests and information without their consent in violation of Illinois Genetic Information Privacy Act. Plaintiffs Carolyn Bridges, from St. Clair County, and Raymond Cunningham, from Champaign County, are members of the proposed class. Doc. 22. ¶¶ 15-16. ("Plaintiffs"). Plaintiffs are, and have been at all

relevant times, residents and citizens of Illinois. *Id.* Defendant Blackstone is an investment management company that acquired Ancestry in 2020. *Id.* at ¶ 17. Among its products, Ancestry sells at-home DNA kits that provide customers with information about their heritage, ethnicity, and other details. *Id* at ¶¶ 3, 26.

Plaintiff Bridges purchased an at-home DNA kit and sent a saliva sample to Ancestry in or around February 2017, and Plaintiff Cunningham submitted DNA test results to Ancestry, after purchasing a DNA testing product, in or around November 2018. *Id.* at ¶¶ 32-39. Ancestry then sequenced Plaintiffs' DNA from the provided genetic material and information and took possession of their unique genetic tests and the information derived therefrom. *Id.* These genetic tests and other genetic information were also paired with Plaintiffs' personal information, including first and last name, email address, home address, and other identifying information. *Id.* at ¶ 30.

On August 5, 2020, Blackstone announced that it reached a deal to acquire Ancestry and, on December 4, 2020, announced that the deal was completed. *Id.* at ¶ 4-5. As disclosed in Blackstone's regulatory filings and later on the Ancestry.com website, Blackstone's acquisition included the release and/or disclosure of all of the customers' genetic information by Ancestry to Blackstone for its own use. *Id.* at ¶¶ 27-31. By doing so, Blackstone compelled the disclosure of customers', including Plaintiffs', highly-sensitive genetic tests and the information derived therefrom. *Id.* Plaintiffs never consented, agreed, or gave permission—written or otherwise—to Ancestry to transfer

these highly-sensitive and personal materials to a third-party, *id.* at ¶ 4, and, similarly, Blackstone never provided Plaintiffs with—nor did Plaintiffs ever sign—a written release allowing Blackstone to take possession of their unique genetic testing and related information. *Id.* Nor did Blackstone's conduct fall under any of the numerous exceptions listed under GIPA. *Id.* at ¶ 12.

As citizens of Illinois, Plaintiffs' biometric privacy information is protected by GIPA, which provides that genetic testing and information derived from genetic testing is "confidential and privileged and may be released only to the individual tested and to persons specifically authorized." 410 ILCS 513/15(a). GIPA prohibits persons and entities, such as Blackstone, from compelling the disclosure of genetic testing and information derived from genetic testing unless specifically authorized in writing by the individual whose personal genetic information is being disclosed. *See* 410 ILCS 513/15(a), 410 ILCS 513/30(a). GIPA defines "genetic information" as information pertaining to: (i) the individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.[2]

---

[2] GIPA incorporates several terms and concepts from the "Privacy Rule" under the Health Insurance Portability and Accountability Act (the "HIPAA"). This includes the definition of the term "genetic information," which is defined under HIPAA Reg. 45 FR 160.103.

GIPA's definition of "genetic testing" was amended in 2018 to include "direct-to-consumer commercial genetic testing" by companies like Ancestry. *See* 410 ILCS 513/10.

Plaintiffs sued Blackstone for violating their rights—and the rights of all similarly situated consumers that had their genetic testing and information derived from genetic testing obtained by Blackstone while residing in Illinois—under GIPA. Doc. 22 at ¶ 40. Plaintiffs alleged that, through at-home DNA kits, Ancestry took possession of and sequenced their DNA, thereby obtaining their genetic information and the information derived therefrom. *Id.* at ¶¶ 32-39. Plaintiffs further alleged that this GIPA-protected information was transferred to Blackstone as a result of Blackstone's compelling such disclosure during and through its acquisition of Ancestry. *Id*. Thus, Plaintiffs alleged that Blackstone failed to comply with GIPA by compelling the disclosure of and obtaining Plaintiffs' and Class Members' GIPA-protected information without their prior express written authorization to do so. *Id.* at ¶ 52.

## <u>SUMMARY OF THE ARGUMENT</u>

The district court dismissed the case for two reasons: (1) because Plaintiffs supposedly failed to allege that Blackstone plausibly "compelled" the information; and (2) because Plaintiffs supposedly failed to allege that the information collected from them was protected under GIPA. *See* Doc. 41 at p.8.

First, neither conclusion is supported by the statutory text or GIPA's legislative history. Moreover, regarding the first conclusion, Blackstone's conduct does qualify as

"compelling" under the definition offered by Blackstone itself and accepted by the district court. The district court conducted a fact-intensive inquiry into Plaintiffs' allegations about "compelling" and concluded that they were not supported by the documents upon which Plaintiffs' allegations relied. However, the district court's analysis was flawed because it failed to construe the allegations in a light most favorable to Plaintiffs, as is required at the pleading stage.

Second, the district court's conclusion that the information Blackstone compelled and acquired from Ancestry did not constitute GIPA-protected information was based upon a version that had been amended since the acquisition (and critically so). Further, the documents relied upon by Plaintiffs do, in fact, support the reasonable inference that the information acquired in Blackstone's purchase of Ancestry plausibly included GIPA-protected information.

In sum, when drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' well-pleaded allegations demonstrate a plausible GIPA violation and the district court erred by dismissing the complaint.

## ARGUMENT

## I.      STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court's grant of dismissal is reviewed *de novo* by this Court. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal citation omitted). "A plaintiff's complaint need only provide a 'short

and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Id.* Further, at this pleading stage, this Court construes the complaint's allegations "in the light most favorable to plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [their] favor." *Id.*

## II.  THE DISTRICT COURT ERRED IN DISMISING PLAINTIFFS' CLASS ACTION COMPLAINT.

### A.  The well-pleaded allegations lead to the plausible inference that Blackstone illegally "compelled" the disclosure of genetic information, in violation of GIPA.

In its order dismissing the case, the district court's first reason supporting its decision was that Plaintiffs "failed to allege that Blackstone *compelled* Ancestry". Doc. 41 at p.8. That is wrong, for several reasons. First, the Complaint explicitly and repeatedly alleges that Blackstone did, in fact, compel Ancestry to disclose Plaintiffs' GIPA-protected information. *See* Doc. 22 ¶¶ 4, 10, 31, 39, 52. ("Blackstone compelled the disclosure of highly sensitive genetic information provided by individuals to Ancestry through its acquisition.") Second, GIPA's statutory language and legislative history support the plausible inference that Blackstone's conduct qualifies as "compelling" the disclosure of Plaintiffs' protected information in such a manner as to constitute a GIPA violation. When construing all of the well-pled facts most favorably to Plaintiffs and drawing all reasonable inferences in their favor, it is clear that Blackstone plausibly violated GIPA, which is all that is required to survive a motion to dismiss. *See, e.g., Tamayo,* 526, F. 3d at 1081.

In its analysis, the district court properly began its analysis of Plaintiffs' claims by looking at GIPA's statutory language. GIPA contains numerous enumerated exceptions to the general rule prohibiting the release and disclosure of genetic information—but none of the exceptions apply to entities, like Blackstone, that acquire a private company in a multi-billion-dollar transaction. *See generally* 410 ILCS 513/15(b); 410 ILCS 513/22; 410 ILCS 513/30(a)(3)–(6); 410 ILCS 513/15(b); 410 ILCS 513/31–31.10.[3] Rather, as the district court noted, Plaintiffs and Blackstone disagreed on how to interpret the following language:

> No person may disclose *or be compelled* to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of this test."[4]

Doc. 41 at p.4-5. As noted by the district court, "the addition of the second clause" demonstrated the legislature's intent to protect individuals who undergo genetic testing in two ways: "(1) by prohibiting third parties who possess [the person's] genetic data from improperly disclosing it, and (2) by shielding them *from persons* who seek to compel the genetic data for improper purposes. *Id.* at 5 (emphasis added).

---

[3] GIPA's exceptions apply in discrete and limited circumstances, none of which apply here. However, GIPA prohibits the compelled disclosure that Plaintiffs allege that Blackstone engaged in here. 410 ILCS 513/30(a). Section 35 does not provide any such exception, and instead puts a limit on any entity that obtains genetic information from further disclosing it. Here, none of the exceptions codified in GIPA apply to Blackstone's conduct, and thus Blackstone never lawfully came into possession of Plaintiffs' genetic testing information in the first instance, such that the provisions of Section 35 are not at issue.

[4] As noted by the district court, GIPA does not define "compelled". Doc. 41 at p.8.

Applying GIPA's statutory language to this matter, the "person" is Ancestry, who was "compelled" by Blackstone to disclose Plaintiffs' genetic information. Nonetheless, Blackstone argued that it "does not neatly fit into either category" (disclosing party, or person compelling disclosure) because Plaintiffs do not "allege that Blackstone compelled Plaintiffs to disclose their data in violation of the second clause." *Id*. at pp. 5-6.

The district court agreed with Plaintiffs, holding "that Plaintiffs, as the persons whose genetic data is the subject of the alleged wrongdoing, may seek redress against any 'offending party' who compels the disclosure of their personal data, whether that 'offending party' compels the data directly from Plaintiffs or from a non-party in possession of their data." *Id*. at pp. 6-7.

The next step of the district court's textual analysis evaluated Plaintiffs' and Blackstone's respective definitions of the verb "to compel". Doc. 41 at p.8. A basic axiom of statutory interpretation is that "[w]ords and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute." *Rushton v. Dep't of Corr.*, 160 N.E.3d 929, 934 (Ill. 2019). No part of a statute should be rendered meaningless or superfluous. *Id*. Finally, "[u]ndefined terms in the statute must be given their ordinary and popularly understood meaning." *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 751 (Ill. 2015).

Accordingly, this Court should apply the popularly understood meaning of "compel", which is "to influence or obligate that person to do something." Doc. 34 at p.7.

Under this definition, Section 30(a) of GIPA plainly prevents entities like Blackstone from influencing or obligating others, in this case Ancestry, to disclose GIPA-protected information. 410 ILCS 513/30. Plaintiffs have alleged that Blackstone, through its deal with Ancestry, clearly "influenced" Ancestry at the very least, but that it also "obligated" Ancestry. Doc. 34 at p.7. Such allegations must be taken as true, such allegations and the reasonable inferences draw therefrom are alone sufficient to reverse the district court's incorrect definition of "compel."

Although the district court entertained Plaintiffs' definition and did not outright reject either party's definition, because "the definitions are not in conflict", Doc. 41 at p.8, the district court held that "to compel" "means something more than *passive receipt* of information, and something more than *merely 'asking' or 'requesting'* another to take an action." *Id.* (emphasis added).

Even under this interpretation, Blackstone's conduct nonetheless qualifies as alleged in Plaintiffs' Complaint. "Passive" means "not participating readily or actively; inactive".[5] For Blackstone to have "passively" received and/or obtained Plaintiffs' information, it would have had to receive the Plaintiffs GIPA-protected information sua sponte from Ancestry, not through the extensive and active role Blackstone undertook to complete a $5 billion dollar purchase of a private company that Blackstone knew was in

---

[5] *See* Dictionary.com, available at https://www.dictionary.com/browse/passive (last accessed October 29, 2022).

possession of genetic information. *See* Doc. 22 ¶ 4. Blackstone thus "actively participated" in the process that resulted in Ancestry's disclosure of Plaintiffs' genetic information to Blackstone. *See also id* ¶ 31 (alleging "Blackstone compelled the disclosure of highly sensitive genetic information provided by individuals to Ancestry through its acquisition").

Plaintiffs need not define "asking" and "requesting" to evaluate the second clause of the district court's interpretation, as both terms are commonly understood. But Plaintiffs properly alleged, and it can plausibly be inferred, that but for Blackstone's active acquisition of Ancestry, Ancestry would not have disclosed Plaintiffs' genetic information to Blackstone simply because Blackstone asked for it or requested it. Indeed, there is no evidence in the record to support the contention that Ancestry would simply disclose confidential genetic information of Plaintiffs to any other non-acquiring entity simply because they asked for it. In pursuing its multi-billion dollar acquisition of a company in possession of valuable biometric information, Blackstone's acquisition was part of its grand entrance into the very lucrative genetic testing market, and it can plausibly be inferred that part of that steep price was based on the value of Ancestry's unique data assets, including the confidential genetic information of Plaintiffs.

At a minimum, the Complaint's well-pleaded facts, when construed most favorably to Plaintiffs, lead to the plausible inference that Blackstone's role in the acquisition of Ancestry and Plaintiffs' genetic information qualifies as "something more

than passive receipt" of the information transferred in the acquisition and similarly "something more than 'merely asking or requesting'" another to take an action. Blackstone actively obtained the information in question by acquiring Ancestry, thus enabling Blackstone to influence and obligate Ancestry to disclose the genetic information of Plaintiffs that Ancestry otherwise would not have disclosed. In short, even under the district court's definition, Blackstone did much more than "passively receive," "request," or "ask for" the information at issue.

The remainder of the district court's reasoning regarding whether Blackstone "compelled" the information consisted of a thorough scrutiny the Complaint's well-pleaded facts – even though those are required to be taken as true at the pleading stage. *Tamayo*, 526 F.3d at 1081. First, the district court took issue with Plaintiff's argument that Blackstone asserted "some untoward influence or force over Ancestry because of Blackstone's wealth and. . . reputation" because: (1) the argument does not appear in the complaint, and (2) Plaintiffs supposedly ignored "the specific allegations in the Complaint showing that Ancestry has a wealth and global reach comparable to Blackstone", referencing ¶¶ 2, 4, 25-26 of the Complaint. Doc 41 at p.9.

As an initial matter, Plaintiffs are not required to plead arguments or legal theories. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017); *La Porte Cnty. Republican Cent. Comm. v. Bd. of Comm'rs of Cnty. of La Porte*, 43 F.3d 1126, 1129 (7th Cir. 1994). Moreover, construing the Complaint's allegations "in the light most

favorable to [P]laintiffs, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [their] favor," *Tamayo*, 526 F.3d at 1081, Blackstone's power dynamic over Ancestry, if not obvious through the very fact that it acquired Ancestry with its pocket change, is also plausibly be inferred from the well-pleaded facts, which, among other things, notes that Blackstone acquired Ancestry and "boasts half a trillion dollars in assets[.]" Doc. 22 at ¶ 27. At the very least, there is a fact dispute as to Ancestry and Blackstone's relative sophistication and bargaining power such that, at a minimum, some discovery would have been required before dismissing Plaintiffs' Complaint on the pleadings alone.

Crucially, there is no evidence in Plaintiffs' Complaint that implies that Ancestry had wealth, influence or sophistication comparable to Blackstone: paragraph 2 of the Complaint only discusses the number of records in Ancestry's possession, nothing about its finances; paragraph 4 of the Complaint provides support for Plaintiffs' position by noting that Blackstone is "one of the largest private equity companies in the world" and does not mention Ancestry's finances; and paragraph 26 only covers some of the products and services offered by Ancestry, and the attached article in support, Ancestry's frequently asked questions page, is also bereft of information related to Ancestry's bargaining power. Paragraph 25 is the only allegation that discusses Ancestry's finances, through a document in the footnote, but even this passing reference demonstrates the resource disparity. While the article states (with little specificity) that Ancestry's annual

13

revenue is "over $1 billion", it also states that Blackstone was capable and cash-rich enough to purchase Ancestry for nearly five times its annual *revenue*, not profit, and that Blackstone boasts $584 billion in assets. Doc. 22 at ¶ 27, n.7. To say that these figures demonstrate comparable wealth is the equivalent of saying that a person making $50,000 a year has comparable wealth to a person with $29 million in assets, by scale.

Moreover, the district court's point that Ancestry has "comparable global reach" is, without merit in light of Ancestry being less than 1% the size of Blackstone. Blackstone, holding $584 billion in assets, is more influential nationally, and internationally than Ancestry, a company with small fraction of the assets and influence as Blackstone. In sum, Ancestry does not have "wealth. . . comparable to Blackstone" and there was no evidence in the record to support this contention.

Finally, it seems strange that a comparison of relative worth and power would be required at all to define and assess the term "to compel" in this case. The Complaint properly alleged that Blackstone "compelled" Ancestry to disclose the genetic information, and that allegation is all that is required. But even if such a comparison of relative worth was actually relevant, the Complaint sufficiently alleged that Blackstone is worth more and has more power—or, *at an absolute minimum*, there is a factual dispute as to that issue.

Next, the district court claimed that "the other allegations in the Complaint cannot reasonably be construed to show that Blackstone compelled Ancestry to take *any* action,"

and further that the allegations' relied-upon documents "contradict Plaintiffs' broad conclusory allegations[.]" Doc. 41 at p.9 (emphasis in original). First, the district court disputed Plaintiffs' allegations that Blackstone "disclosed on Ancestry's website that customers' genetic information would be released and/or disclosed to Defendant [Blackstone] for its own use" and that the genetic information was paired with the individuals' personal information. *Id.* at p.10. According to the district court, these allegations were not supported because: (1) Blackstone is not mentioned in Ancestry's Privacy Statement; (2) Ancestry's Privacy Statement stated that Ancestry would not share personal information or genetic information with third parties; (3) Ancestry's Privacy Statement only said that Ancestry "***may*** share…Personal Information with the acquiring or receiving entity"; and (4) Ancestry's Privacy Statement stated that its promises as to customers' privacy would continue in the event of an acquisition. *Id.* (emphasis in original).

Part of the district court's confusion comes from the fact that—at some point between the Complaint and the district court's opinion—Ancestry's Privacy Statement was amended (and critically so). Distinct from the version relied upon by the district court, the December 2020 version, the version which was in effect at the time Blackstone actually acquired Ancestry (herein "Effective Privacy Statement"), stated that Ancestry *will* transfer customers' information to the acquiring entity, compared to the district

court's version stating that Ancestry *may* transfer the information.[6] Even if the court relies on the current version of the transfer provision, "may" in contract law grants the party *full discretion* to do so. Considered together with the well-pleaded facts about Blackstone's acquisition and Blackstone's interest in Ancestry's valuable genetic data, Doc. 22 at ¶¶ 26-27, a reasonable juror could plausibly infer that Ancestry disclosed the information at Blackstone's request.[7] Second, Ancestry's statement that it would not share information with third parties only applies to third parties that do not qualify under any of the numerous exceptions outlined in the Privacy Statement.[8] Blackstone's acquisition of Ancestry appears to be an explicit exception to Ancestry's statement that it would keep its users genetic information private.

The district court further concluded that the Complaint's relied-upon documents did not "indicate[] that Blackstone made these representations on Ancestry's website." Doc. 44 at p.10. Blackstone completed its acquisition of Ancestry on December 4, 2020.

---

[6] *Compare* the Effective Privacy Statement with the amended Privacy Statement. *See* https://web.archive.org/web/20201201000212/https://www.ancestry.com/cs/legal/privacystatement (last accessed October 30, 2022).

[7] Notably, the district court quoted language from the Privacy Statement that Ancestry "may share" Personal Information in the event of an acquisition, and in the very next sentence cited language in the Privacy Statement that states: "The promises in this Privacy Statement will continue to apply to your Personal information *that is transferred* to the new entity." Doc. 41 at p.10 (emphasis added).

[8] *See* Effective Privacy Statement (last accessed October 30, 2022) ("Ancestry does not share your individual Personal Information . . . with third-parties *except as described in this Privacy Statement*[.])

Doc. 22 at ¶ 27. *Who* made *what* representations is a technicality because the only facts that Plaintiffs need to allege are that the information was illegally disclosed due to Blackstone compelling such disclosure. Similarly, the district court's statement that "nor does the statement indicate that Ancestry did or planned to share Plaintiffs' genetic information with Blackstone for Blackstone's use or otherwise," *id.*, mistakenly and inappropriately relies on Ancestry's *amended* version of the Privacy Statement rather than the allegations of *Plaintiffs'* Complaint, which must be taken as true. *Tamayo*, 526 F.3d at 1081. Defendant's argument should have been disposed of through review of the correct transfer provision contained in the Effective Privacy Statement, which was in place at the time of the acquisition.[9]

Next, the Complaint alleges that Blackstone disclosed in regulatory filings that "agreements to share information. . . have already been implemented and that its effort to package and sell data. . . is underway". Doc. 41 at pp.10-11. Plaintiffs alleged that this disclosure referred to the transferring of genetic information from Ancestry to Blackstone, but the district court, however, held that this allegation was not supported by and/or was contradicted by the relied-upon news article because: (1) Ancestry was not mentioned; (2) the article does not refer to genetic testing data or information; and (3) a Blackstone

---

[9] *See* Effective Privacy Statement (last accessed October 30, 2022).

representative stated that Blackstone's data is "fully anonymized with best in-class privacy and compliance protections". *Id.* at p.11.

First, while Ancestry is not explicitly mentioned, it must be considered in context. *In the year 2022 generally*, the article states that Blackstone disclosed its plan to provide companies with data-related services "described as gathering, processing, curating and transforming information 'for monetization through. . . third parties." Doc. 22 ¶ 28, n.7. The article further provides that Blackstone "is preparing to package and sell data from companies it acquires in future deals" as well as that Blackstone "already has information sharing and usage agreements in place. . . to obtain data from portfolio companies owned by its funds." *Id.* In the context of the Ancestry acquisition having been completed two weeks before this statement was made, it is plausible to infer that Blackstone had entered into data sharing/transfer agreements with the genetic testing company it had just spent $5 billion to acquire. Next, while "genetic information" is not explicitly identified in the article, it nevertheless characterizes Blackstone as seeking to obtain "alternative data" related to "customers and other metrics" through its acquisitions. *Id.* Tying these facts together, it is more than plausible that the "alternative data" related to customers Blackstone engaged in agreements to acquire included Ancestry's GIPA-protected genetic information.

Finally, Blackstone's statements that vaguely but suspiciously assured legal compliance, cannot be taken at face value, especially at the pleading stage. The fact of the

matter is that if the transfer of genetic information occurred at all, as Ancestry's documents explicitly state *would* occur in the event of an acquisition, it is not feasible to both transfer the information and comply with the law because GIPA outright prohibits such a disclosure without the express, written authorization of the genetic test subjects like Plaintiffs. *See* 410 ILCS 513/5(1)–(3). The district court's decision to toss these well pled allegations aside is emblematic of the greater problem—that it failed to review the allegations in the light most favorable to Plaintiffs.

The district court concluded from its review of the (wrong) documents that they do "not support Plaintiffs' broad conclusory allegation that Blackstone received genetic information from affiliated entities, like Ancestry, or was packaging or selling Plaintiffs' data to unaffiliated third parties". Doc. 41 at p.11. But, according to the article, Blackstone already had "agreements in place that permit it to obtain data from portfolio companies owned by its funds", like Ancestry, and that Blackstone disclosed its new business strategy based upon "gathering, processing, curating, and transforming [data] 'for monetization through. . . sale arrangements with third parties." Doc. 22 ¶ 28, n.7. Accordingly, it is plausible to infer, at the minimum, that Blackstone did in fact pursue a business strategy to package and sell data of (and as disclosed to the regulators prior to the acquisition of) Ancestry, a "portfolio company owned by its funds" and notably in possession of valuable and unique personal and genetic information *i.e.* data.

For the foregoing reasons, the only reasonable inference that can be made while construing the well-pleaded facts most favorably to Plaintiffs from the relied-upon documents is that Ancestry disclosed GIPA-protected information to Blackstone, and that such disclosure was compelled by Blackstone.

### B.     The information alleged to have been received by Blackstone is protected by GIPA.

The second reason cited by the district court for dismissal was that, even if Blackstone had "compelled" Ancestry (which it did), the Complaint "fails to allege that the purported information Blackstone received from Ancestry is information protected by GIPA." Doc. 41 at p.11. The district court properly recognized the information protected by GIPA includes: the "identity of any person upon whom a genetic test is performed or the result of a genetic test in a manner that permits identification of the subject of the test". *Id.* As also acknowledged by the district court, the Complaint alleges the information received by Blackstone was GIPA-protected information: "Blackstone obtained their genetic information, and that information was paired with their 'first and last name, email address, home address, and other information." Doc 22 at ¶ 30.

However, the district court nonetheless dismissed Plaintiffs' Complaint based on its belief that "the actual documents Plaintiffs rely on contradict" the Plaintiffs' allegations. Doc. 41 at p.11. Unfortunately, the district court's bare statement did not explain *how* the documents allegedly did so. Thus, Plaintiffs must thoroughly refute the district court's claims.

20

First, the relied-upon documents *do* demonstrate that Ancestry collected Plaintiffs' genetic information and personal information. Of course, this is only logical where the entire purpose of Ancestry's DNA service is to sequence genetic material—in fact, Ancestry explicitly states as much: "Ancestry will collect, process, and share your Personal Information. . . such as your name, email or address, . . . (including your Genetic Information if you have taken a DNA test)[.]"[10] *See* Doc. 22 ¶ 29, n.8. Far from contradicting the Complaint, the Effective Ancestry Privacy Statement document robustly supports, if not outright proves, that Ancestry collected GIPA-protected data. *See* 410 ILCS 513/30 ("[D]isclose *the identity of any person* upon whom a genetic test is performed or the rests of a genetic test in *a manner that permits identification of the subject* of this test.") (emphasis added). It should go without saying that names identify individuals, but emails, and addresses are also often used to identify a person, often quite easily where an individual's email contains portions of their name. Further Ancestry also explicitly describes "Personal Information" (including "Genetic Information") as "information that can identify you". Doc. 22 ¶ 29, n.8. Under any approach, the only reasonable inference from these facts is that Ancestry collects GIPA-protected information from its customers.

---

[10] For more evidence in support of this allegation, *see* Doc. 22 ¶ 29, n.8 (To process these DNA kits, Ancestry provides that it "extract[s] your DNA from your saliva and convert it into machine-readable biometric data ("**DNA Data**")"; *see also id.* ("Ancestry uses your Genetic Information for the following primary purposes. . .")).

Concerning Plaintiffs' allegations that Personal Information was paired with Genetic Information by Ancestry, these allegations are not conclusory, but are supported by the Effective Privacy Statement. ("we may supplement the data we collect . . . in order to personalize the Services and our offers to you.") *Id.* Implicit in this statement is that Ancestry uses customers' data to "personalize" its services. In other words, Ancestry uses the personal information and genetic information to target certain customers with certain Ancestry products or services. Ancestry could not effectively use customers' personal information and genetic information for marketing purposes simply by using a customer's name in isolation, as very little information can be extracted from a sole piece of data. Accordingly, it is a reasonable inference that Ancestry plausibly pairs customers' data, including their personal information and genetic information, for marketing purposes. Lastly, the facts lead to the plausible inference that Blackstone received this GIPA-protected information from Ancestry when Blackstone acquired the company, because the transfer provision in the (since-amended) Effective Privacy Statement so states: "If Ancestry or its businesses are acquired or transferred. . . we will share your Personal Information."[11]

---

[11] *See* Effective Privacy Statement (last accessed October 30, 2022).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the district court's grant of dismissal and remand this matter to the district court for further proceedings consistent with such ruling.

Respectfully submitted,

<u>/s/ *Gregory L. Shevlin*     </u>
Gregory L. Shevlin
*(Counsel of Record)*
COOK, BARTHOLOMEW,
SHEVLIN, COOK & JONES, LLP
12 West Lincoln Street
Belleville, IL 62220
(618) 235-3500

Jonathan M. Jagher
FREED KANNER LONDON
& MILLEN, LLC
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486

Katrina Carroll
LYNCH CARPENTER LLP
111 West Washington Street
Suite 1240
Chicago, IL 60602
(312) 750-1265

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 5,370 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point style font.

Dated:   November 14, 2022

/s/ *Gregory L. Shevlin*
Gregory L. Shevlin
One of the Attorneys for Appellants

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by

Circuit Rule 30(a) and (b) are included in the Appendix.


*/s/ Gregory L. Shevlin*
Gregory L. Shevlin

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2022, the Brief and Short Appendix of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Gregory L. Shevlin*
Gregory L. Shevlin

# APPENDIX

## TABLE OF CONTENTS TO APPENDIX

Memorandum and Order (Docket No. 41), filed July 8, 2022 .................................. A-1

Judgment in a Civil Case (Docket No. 43), filed August 16, 2022 ......................... A-13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CAROLYN BRIDGES, and | ) | |
| RAYMOND CUNNINGHAM, | ) | |
| *individually and on behalf of all* | ) | |
| *others similarly situated,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 21-cv-1091-DWD |
| | ) | |
| BLACKSTONE GROUP, INC., | ) | |
| | ) | |
| Defendant. [1] | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiffs Carolyn Bridges and Raymond Cunningham bring this putative class action against Defendant Blackstone Group, Inc. alleging violations of the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513/1, *et seq.* ("GIPA") in connection with Blackstone's acquisition of non-party Ancestry.com DNA LLC. Plaintiffs filed an Amended Complaint seeking injunctive relief, statutory damages, and attorneys' fees (Doc. 22). Now before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 30). Plaintiffs filed a memorandum in opposition (Doc. 34), to which Blackstone replied (Doc. 36). For the reasons detailed below, the Motion will be granted.

---

[1] According to Defendant, as of August 6, 2021, The Blackstone Group Inc. is now "Blackstone, Inc." (*See* Doc. 1). Plaintiffs refer to Defendant as such in their First Amended Class Action Complaint (Doc. 22). The Clerk of Court is DIRECTED to update Defendant's name to Blackstone, Inc. on the docket sheet to reflect this change.

**The Complaint**

Plaintiffs allege the following facts, which for the purposes of this motion are taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) Plaintiffs are residents of Illinois (Doc. 22, ¶¶ 15-16). Plaintiffs purchased at-home DNA test kits from non-party, Ancestry.com LLC ("Ancestry") and provided their genetic material to Ancestry for sequencing (Doc. 22, ¶¶ 3, 22-35). In December 2020, Defendant Blackstone acquired Ancestry (Doc. 22, ¶ 4). In connection with the acquisition, Blackstone allegedly compelled the disclosure of Ancestry's "trove of DNA data", which included Plaintiffs' genetic testing data (Doc. 22, ¶¶ 4, 10, 52). Plaintiffs "never consented, agreed or gave permission-written or otherwise-to Ancestry to transfer their genetic testing and information derived from genetic testing to a third-party" or for Blackstone to take possession of their data (Doc. 22, ¶¶ 36, 37). Plaintiffs would not have provided their genetic information to Ancestry if they had known that Blackstone would compel its disclosure and take possession of their information without their consent (Doc. 22, ¶ 38).

**Legal Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic

2

recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing the complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

<u>Discussion</u>

Plaintiffs assert that Blackstone compelled the disclosure of their genetic testing data from non-party Ancestry without Plaintiffs' written consent or knowledge (Doc. 22, ¶¶ 4, 10, 31, 52) and in violation of the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513/1, *et seq.* ("GIPA").[2] GIPA was designed to prevent employers and insurers from using genetic testing data as a means of discrimination for employment or underwriting purposes.[3] As such, GIPA declared that "genetic testing and information derived from genetic testing" is "confidential and privileged" and placed restrictions on the ability to release that information. *See* 410 Ill. Comp. Stat. Ann. 513/15(a). GIPA also provides a private right of action for "[a]ny person aggrieved by a violation of this Act … against an offending party." 410 Ill. Comp. Stat. Ann. 513/40(a).

---

[2] Although originally enacted in 1998, GIPA has only been cited in a handful of cases. *See, e.g., Big Ridge, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 715 F.3d 631, 657 (7th Cir. 2013); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021); *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, at ¶ 17; *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447 (N.D. Ill. 2021), *Manor v. Copart Inc.*, No. 17-CV-2585, 2017 WL 4785924 (N.D. Ill. Oct. 24, 2017).

[3] *See, e.g.,* 410 Ill. Comp. Stat. Ann. 513/5(3) ("The public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information."); 410 Ill. Comp. Stat. Ann. 513/20 (restricting insurers from seeking genetic testing for underwriting purposes); 410 Ill. Comp. Stat. Ann. 513/25 (restricting employers from requesting genetic testing or genetic testing information from employees and applicants or their family members). The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009).

Relevant to this matter, GIPA provides the following restrictions on the disclosure of genetic testing information:

> [G]enetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing in accordance with Section 30, by that individual to receive the information.

410 Ill. Comp. Stat. Ann. 513/15(a).  Section 30 further provides:

> No person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test [except to those persons found in Section 30(a)(1)-(6)[4]].

*See* 410 Ill. Comp. Stat. Ann. 513/30(a).

Blackstone denies that it compelled the disclosure of Plaintiffs' genetic testing information from Ancestry, and further denies that it ever obtained or received information protected by GIPA.  Blackstone also maintains that GIPA does not provide a right of action against it, a purported ***recipient*** of genetic information, but instead argues that GIPA imposes liability on the wrongful ***discloser*** of that information.  To that end, Blackstone insists that that even if it did somehow compel Ancestry to disclose information, the mere act of compelling under these circumstances is not a violation of GIPA (Doc. 30, p. 7).  Plaintiff disagrees with this reading and argues that that limiting recourse generally to only the person disclosing the information would render the words "or be compelled to disclose" meaningless. (Doc. 34, p. 5).

The parties disagree on the interpretation of the following language:

---

[4] These persons generally include legally authorized representatives and employees of health care facilities. *See* 410 ILCS 513/30(a)(1)-(6).   The parties do not argue that Defendant fits into one of these six-categories.

4

> No person[5] may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of this test.

410 Ill. Comp. Stat. Ann. 513/30.  A plain reading of this sentence suggests that the two phrases are complimentary but distinct.  The *first* clause, "no person may disclose," prohibits a person possessing genetic testing data from improperly disclosing that data to another.  The *second* clause, "no person may … be compelled to disclose," protects a person possessing genetic testing data from being compelled to disclose that data to another.  While similar, the addition of the second clause ensures that individuals who undergo genetic testing are protected in two distinct ways: (1) by prohibiting third parties who possess their genetic data from improperly disclosing it, and (2) by shielding them from persons who seek to compel their genetic data for improper purposes.  Accordingly, Section 30, in addition to the broad definition of "person", operates to ensure that any person in possession of genetic data (including both individuals undergoing genetic testing like Plaintiffs, and persons who obtained genetic data from those individuals, like Ancestry) are protected against others who mishandle genetic data by either improperly disclosing it or improperly compelling it.

The problem in this case, however, is that as alleged, Blackstone does not fit neatly into either category.  Plaintiffs do not allege that Blackstone disclosed Plaintiffs' genetic data in violation of the first clause.  Nor do Plaintiffs allege that Blackstone compelled

---

[5] "Persons" is broadly defined under the statute as "any natural person, partnership, association, joint venture, trust, governmental entity, public or private corporation, health facility, or other legal entity."  410 Ill. Comp. Stat. Ann. 513/10.  The parties do not appear to dispute that both Ancestry and Blackstone would qualify as "persons" under GIPA.

5

Plaintiffs to disclose their data in violation of the second clause.  Instead, Plaintiffs present a quasi-subrogation claim whereby Plaintiffs seek redress for Blackstone's compelling of *Ancestry*'s alleged improper disclosure of data.  Notably, Plaintiffs are not bringing a claim against Ancestry for its alleged part in improperly disclosing their data to Blackstone (*See* Doc. 22, ¶ 36) (Plaintiffs allege that they never gave Ancestry permission to disclose their data).   However, in this case, Plaintiffs' personal data is the subject of the wrongful disclosure.  As such, Plaintiffs seemingly qualify as "aggrieved persons" under GIPA's enforcement provision which permits "[a]ny person aggrieved by a violation of this Act [to] have a right of action … against an offending party."  410 Ill. Comp. Stat. Ann. 513/40(a).

While the Act does not define "person aggrieved", Plaintiffs urge the Court to adopt a similar broad reading of "aggrieved person" as used by the Illinois Supreme Court in interpreting a similar Illinois privacy statute, the Illinois Biometric Privacy Act ("BIPA").[6]  *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, at ¶ 40 (holding that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [BIPA] in order to qualify as an 'aggrieved' person" under the Act). Although the privacy statutes differ significantly in scope[7], they have identical enforcement provisions.  *See* BIPA, 740 Ill. Comp. Stat. Ann. 14/20 ("Any person

---

[6]"Federal courts must defer to a state supreme court's interpretation of its own statutes" *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 3:20-CV-00046-MAB, 2020 WL 4815960 (S.D. Ill. Aug. 19, 2020), n. 5 (S.D. Ill. 2020) (citing *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 590 (7th Cir. 2008).

[7] BIPA explicitly prohibits the disclosure or release of biometric data in addition to the prohibiting the receipt of such data.  *See* 740 Ill. Comp. Stat. Ann. 14/15(b) ("No private entity may collect, capture, purchase, receive through trade, or otherwise obtain" biometric data without informed written consent"). Whereas the plain language of GIPA only prohibits the *disclosure* or *compelled disclosure* of genetic data.

aggrieved by a violation of this Act shall have a right of action … against an offending party."); GIPA, 410 Ill. Comp. Stat. Ann. 513/40(a) ("Any person aggrieved by a violation of this Act shall have a right of action … against an offending party.").[8]  In Illinois, "a statute should be construed in conjunction with other statutes touching on the same or related subjects considering the reason and necessity of the law, the evils to be remedied, and the objects and purposes to be obtained." *Sekura*, 2018 IL App (1st) 180175 (quoting *Maschek*, 2015 IL App (1st) 150520, ¶ 17 (internal markings and quotations omitted).

Here, the Court finds it appropriate to apply the definition of "aggrieved person" used by the *Rosenbach* court to GIPA.  As the *Rosenbach* court reasoned, a broad reading of "aggrieved person" in BIPA is consistent with Illinois' understanding of the term "aggrieved", which has been frequently defined for decades as "having a substantial grievance; a denial of some personal or property right." *Rosenbach*, 2019 IL 123186, ¶ 30 (citing *Glos v. People*, 259 Ill. 332, 340 (1913)).  Therefore, applying a similarly broad reading of "aggrieved person" here suggests that Plaintiffs, as the persons whose genetic data is the subject of the alleged wrongdoing, may seek redress against any "offending party" who compels the disclosure of their personal data, whether that "offending party" compels the data directly from Plaintiffs or from a non-party in possession of their data.  As such, under these facts, Blackstone's position as the "compeller" of a non-party in possession of Plaintiffs' genetic data, does not summarily exclude it from liability under GIPA.

---

[8] These statutes are also similar in purpose and wording to the AIDS Confidentiality Act, 410 Ill. Comp. Stat. Ann. 305/13.  *See Sekura*, 2018 IL App (1st) 180175.

Notwithstanding the foregoing, the factual allegations in the Complaint fall short of alleging a violation of GIPA, and Plaintiffs have failed to state a viable claim of relief against Blackstone for at least two reasons.  First, Plaintiffs have failed to allege that Blackstone's compelled Ancestry.  Second, Plaintiffs have failed to allege that Blackstone otherwise received data that is protected by GIPA.  Blackstone's alleged wrongdoing is predicated on its "compelling" of data from Ancestry.  GIPA does not define "compelled."  However, Defendant insists that the definition necessarily requires something more than receipt or obtainment.  The Court agrees.  When statutory terms are undefined, the Court strives to give those words their "ordinary and popularly understood meaning." *Skaperdas v. Country Cas. Ins. Co.*, 2015 IL 117021; *See also Kleber v. CareFusion Corp.*, 914 F.3d 480, 482 (7th Cir. 2019) ("If the statutory language is plain, we must enforce it according to its terms.") (citation omitted).

The parties propose various definitions of "compel", including:  "[t]o cause or bring about by force, threats, or overwhelming pressure," (Doc. 30, p. 10) (citing Black's Law Dictionary (11th ed. 2019)); "to force or drive, especially to a course of action; to secure or bring about by force; to force to submit; subdue, to overpower; to use force; [or] to have a powerful and irresistible effect, influence etc." (Doc. 34, p. 7) (citing *Compel*, Dictionary.com, available at https://www.dictionary.com/browse/compel (last accessed July 1, 2022).  "To compel" is not ambiguous.  Regardless, reviewing the proposed definitions offered by the parties, the definitions are not in conflict.  Instead, it is clear that "to compel" means something more than passive receipt of information, and something more than merely "asking" or "requesting" another to take an action.

8

A-8

However, at best, the Complaint alleges that Blackstone may have been entitled to request or receive information from Ancestry in connection with their acquisition, but that any information received was voluntarily given.

Plaintiffs argue in their briefing that Blackstone did assert some untoward influence or force over Ancestry because of Blackstone's wealth and alleged notorious reputation. However, these arguments do not appear in Plaintiffs' Complaint, and further ignore the specific allegations in the Complaint showing that Ancestry has a wealth and global reach comparable to Blackstone (Doc. 22, ¶¶ 2, 4, 25-26). Thus, suggesting that Blackstone held some coercive power over Ancestry merely because of Blackstone's wealth and reputation, is not plausibly supported or inferred from the allegations in the Complaint. Similarly, the other allegations in the Complaint cannot reasonably be construed to show that Blackstone compelled Ancestry to take *any* action. Throughout the Complaint Plaintiffs continuously cite to purported statements made by Blackstone. However, in reviewing the entirety of those statements, the statements contradict Plaintiffs' broad conclusory allegations and instead suggest the opposite of what Plaintiffs allege. [9]

---

[9] It is appropriate for the Court to review the entirety of the statements incorporated in the Complaint. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (Courts consider the well-pleaded factual allegations in a complaint, along with "documents attached to the complaint, documents that are … referred to in it, and information that is subject to proper judicial notice."). When material in an exhibit contradicts the complaint's allegations, the exhibit controls. *Id.* ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."); *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document.").

For example, Plaintiffs state: "Defendant disclosed on Ancestry's website that customer's genetic information would be released and/or disclosed to Defendant for its own use"; and this genetic information was "paired with [the individual's] … first and last name, email address, home address, and other information."  (Doc. 22, ¶¶ 29-30). However, in reviewing the entirety of the statement cited (Doc. 22, ¶ 29, n.8), the Court observes that the statement is a multi-page overview of an update made to *Ancestry's* Privacy Statement and does not reference Blackstone at all.  *See* https://www.ancestry.com/cs/legal/privacystatement (last accessed July 1, 2022). Moreover, the statement indicates that Ancestry would *not* share personal information or genetic information with third parties.  *Id.*  Further, in the event of an acquisition, Ancestry stated it might share personal information with the acquiring entity.  *Id.* (Ancestry "***may*** share … Personal Information with the acquiring or receiving entity.") (emphasis added).  However, Ancestry also stated that its promises as to privacy would continue to apply in the event of an acquisition.  *Id.* ("The promises in this Privacy Statement will continue to apply to your Personal Information that is transferred to the new entity.").  Thus, nothing in this privacy statement indicates that Blackstone made these representations on Ancestry's website.  Nor does the statement indicate that Ancestry did or planned to share Plaintiffs' genetic information with Blackstone, for Blackstone's own use or otherwise.

Similarly, Plaintiffs allege that "Blackstone disclosed in regulatory filings that agreements to share information between its affiliated entities have already been implemented and that its effort to package and sell data to unaffiliated third-parties is

10

underway." (Doc. 22, ¶ 28 at n.7). However, in reviewing the news article purporting to summarize these regulatory filings, Ancestry is not specifically mentioned (Doc. 30-3).[10] Nor does the article refer to genetic testing data or information *Id.* The article also specifically quotes a Blackstone' representative, stating: "'[N]othing has been sold on behalf of our portfolio companies or Blackstone.' All data the firm's holdings generate "is fully anonymized and includes best-in-class privacy and compliance protections." *Id.* Accordingly, this article does not support Plaintiffs' broad conclusory allegation that Blackstone received genetic information from affiliated entities, like Ancestry, or was packaging or selling Plaintiffs' data to unaffiliated third parties. Therefore, even construing the allegations and statements broadly, the Complaint does not allege or infer that Blackstone compelled Ancestry to take any action.

Moreover, even if Blackstone's actions were somehow compulsory, the Complaint also fails to allege that the purported information Blackstone received from Ancestry is information protected by GIPA. GIPA protects the disclosure or compelled disclosure of the "identity of any person upon whom a genetic test is performed or the result of a genetic test in a manner that permits identification of the subject of this test." *See* 410 Ill. Comp. Stat. Ann. 513/30(a). Plaintiffs allege that Blackstone obtained their genetic information, and that information was paired with their "first and last name, email address home address, and other information" (Doc. 22, ¶¶ 29-30). However, again, the actual documents Plaintiffs rely on contradict these conclusory statements. Thus, the

---

[10] The news article is available at https://www.bloomberg.com/news/articles/2020-12-15/blackstone-s-next-product-could-be-data-from-companies-it-buys (last accessed July 1, 2022). Defendant also provided a copy of the article at Doc. 30-3.

Complaint fails to reasonably infer that the information Blackstone received from Ancestry, if any, identified Plaintiffs as individuals who had genetic tests performed or contained the results of Plaintiffs' genetic data such that Plaintiffs were identified as the subject of that data.

<u>**Conclusion**</u>

For these reasons, Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted. Because the complaint fails to state a claim, the Court declines at this time to reach Defendant's argument concerning whether GIPA applies extraterritorially. Defendant's Motion to Dismiss (Doc. 30) is **GRANTED**. Plaintiffs' Amended Complaint (Doc. 22) is **DISMISSED without prejudice** for a failure to state a claim. Plaintiffs are granted leave to file an amended complaint on or before **August 1, 2022**.

**SO ORDERED.**

Dated: July 8, 2022

_____
DAVID W. DUGAN
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CAROLYN BRIDGES, et al,** ) | |
| *individually and on behalf of all others* ) | |
| *similarly situated,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:21-cv-1091-DWD** |
| ) | |
| **BLACKSTONE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

### <u>JUDGMENT IN A CIVIL ACTION</u>

**DUGAN, District Judge:**

      **IT IS ORDERED AND ADJUDGED** that pursuant to the Court's Order entered on August 16, 2022 (Doc. 42), as well as the Order entered on July 8, 2022 (Doc. 41), this action is **DISMISSED without prejudice** and the case is closed.

      **IT IS SO ORDERED.**

      **DATED: August 16, 2022**

                                      **MONICA A. STUMP, Clerk of Court**
                                      *s/ Dana M. Winkeler*
                                      **Deputy Clerk**

**Approved:** *s/ David W. Dugan*
**David W. Dugan, U.S. District Judge**

A-13